Bush
v.
Livingston and
Townsend.

John Bush, Appellant,

*against*

Peter W. Livingston, and John Townsend,
Respondents.

A security made on a good, and *bona fide* consideration, cannot be impeached on account of a usurious transfer. Therefore, where a mortgage is assigned to a third person, who pays what is due on it to the mortgagee, the mortgagor cannot avoid it in the hands of that third person on account of an agreement to repay him a sum, exceeding the money paid, and legal interest, though the excess will be denied, and only the money actually paid, and lawful interest allowed. If a cause come before this court on appeal from an interlocutory order, and the whole merits of the case appear, the court will make a final decree, and direct the chancellor to carry it into effect.

FROM the pleadings, and cases delivered in this cause, the facts appeared to be these.

*Livingston*, in the years of '96 and '98, borrowed of one *Evertson*, the two several sums of 3,000 dollars and 2,793 dollars, on mortgage. The day of redemption having elapsed, and *Livingston* being further indebted to *Evertson*, for interest and some other matters, amounting, with the above principal sums, to 6,222 dollars, *Evertson* demanded payment. In consequence of this, *Livingston* arranged with him to pay 5,600 dollars cash, and give his notes for the residue. This being acceded to, *Livingston* applied to *Bush* to advance the 5,600 dollars to *Evertson*, agreeing to repay it in 90 days, with a *douceur* of 400 dollars; the money thus advanced, and the *douceur* to be secured by an assignment from *Evertson* of the two mortgages, and their concomitant bonds; each of the several assignments to express 3,000 dollars to be the consideration paid by *Bush* to *Evertson*. These transactions being thus concluded, *Bush* gave to *Livingston* the following receipt: " Received this day, an assignment of one mortgage, bearing date the 4th day of *June*, 1796, given by *P. W. Livingston* to *Nicholas Evertson*, and of another, bearing date the 30th day of *January*, 1798, also given by the said *Livingston* to said *Evertson*, toge-

ther with the bonds accompanying the same, which bonds and mortgages I acknowledge myself to hold, of the said *Livingston*, as security for the payment of six thousand dollars, in ninety days from this date, and upon payment of said sum, I hereby agree with said, *Livingston* to procure the said bonds and mortgages to be cancelled. In witness, &c. 22d *July*, 1799, JOHN BUSH."

The money not being paid, *Bush*, in *September*, 1800, filed his bill to foreclose, against *Livingston* and several of his judgment creditors, stating, among other things, " that *Peter W. Livingston* applied to the said *John Bush*, and requested him to lend the said *Peter W. Livingston* a sum of money, and offered to secure the repayment thereof by procuring an assignment from the said *Nicholas Evertson* to the said *John Bush*, of the said bonds and mortgages." The bill also set forth, that the assignments of the mortgages were made " for a full and valuable consideration, paid by the said *John Bush* to the said *Peter W. Livingston*, and by him to the said *Nicholas Evertson*, as by the said assignments, indorsed on the said indentures of mortgage, and ready to be produced as the court shall direct, and to which he for greater certainty refers himself, may appear."

*Livingston* put in his answer, and after admitting the mortgages, demand of payment by *Evertson*, and his own inability, added, that " being urged by his necessities, he applied to the complainant, *John Bush*, to borrow a sum of money, to pay off the said bonds and mortgages, or the greater part thereof, whereupon the said *John Bush*, taking advantage of his necessities, offered to *loan* him 5,600 dollars for ninety

days, if he, this defendant, would agree to repay the same at the expiration of that time, and to allow and pay, for the use and forbearance thereof for that time, four hundred dollars, to which this defendant, under the pressure of his necessities, agreed." The answer then went on, and set forth the contract for the advance, in the manner already stated, averring the *dou.. ceur* of 400 dollars to exceed the legal interest, for the ninety days, of the sum lent; that, therefore, the *securities were void in the hands of the appellant*, and praying to have them decreed to be given up to be cancelled.

In support of the answer, *Livingston* examined *Evertson* as a witness, and he deposed, that the sum paid to him by the appellant, was no more than 5,600 dollars, which he considered as a loan from *Bush* to *Livingston ;* but, that as to any further consideration for the assignment of the mortgages, he was ignorant, though he acknowledged that he drew up the receipt given by *Bush* to *Livingston* on the execution of the assignment of the mortgages.

After publication had passed, and the cause, as between *Bush* and *Livingston*, was ready for hearing, *Livingston* became a bankrupt, and *Townsend* being duly appointed his assignee, *Bush*, in *February*, 1803, filed a supplemental bill, making him a party.

*Townsend*, in his answer, admitting himself assignee of the estate and effects of *Livingston*, craved the benefit of the pleadings and proceedings on the part of *Livingston*, and insisted on the several matters therein offered and insisted on by *Livingston*, as a defence and bar to the complainant's claim, which matters, he added, " he was informed and believed were true."

ALBANY,
February, 1805.

Bush
v.
Livingston and
Townsend.

'The cause, as against *Livingston*, came to a hearing upon the pleadings and proofs; as against *Townsend*, upon bill and answer, when the chancellor made a decretal order, directing an issue to determine whether the assignment to *Bush* was an usurious contract, or one *bona fide* made. As, however, no specification was made of the evidence to be read on the trial of the issue, and the counsel for the parties could not agree on what should be adduced, application was made for directions as to the proofs to be used, upon which his honour the chancellor was pleased to order, " that the parties have leave to read in evidence the complainant's bill of complaint, the answer of the defendant, *Peter W. Livingston*, the mortgages in the pleadings mentioned, and the assignments thereof, with the exhibits and proofs taken and used at the hearing of this cause in this court, saving to the parties just exceptions to the said defendant's answer, so far as the same is not an answer to the *matters alleged* in the said bill of complaint; and further, that the said parties respectively be allowed to offer any additional, or other evidence, which may be pertinent to the issue so to be tried."

From this order the complainant appealed, contending, that it ought either to have designated what specific parts of the bill, mortgages, &c. should be read in evidence, or have left it at large to the supreme court, to determine what should be so used ; because, from the manner in which the order was expressed, it was referred to the supreme court to determine what should be deemed an *allegation* in the bill. He also insisted, that whatever might be the decision on this point, still, as the court now had the

whole case before them, they would, *of course*, decree definitively on the matter, and that, therefore, he had a right to suggest and insist on whatever might be deemed material, to show that he was entitled to a decree of foreclosure, which this court might pronounce, and remand the cause to chancery, merely to carry such decree into effect.

The respondents, on the other hand, urged, that the order alone, being appealed from, this tribunal had only to decide, whether the chancellor, on ordering a feigned issue, has power to direct what proofs are to be offered ; and, if he has, whether such power was, on the present occasion, legally exercised ?

On the cause being brought on, the chancellor thus assigned his reasons.

*Mr. President*, the bill in this case, after stating the mortgage and assignment, and alleging that the latter was for a full and valuable consideration to the appellant, contained no particular interrogatories, but merely required the respondents to make true, distinct and perfect answers, upon their corporal oaths, to the matters and things in the said bill set forth.— The respondent, *Livingston*, stated the assignment to have been made for a usurious consideration. This appeared to me pertinent to, and a direct answer to one of the objects of the general interrogatory.

This part of the answer cannot be reconciled to the testimony of Mr. *Evertson*, and it was, therefore, a proper subject for an issue.

That the bill might have been so drawn as to avoid this consequence, as was strongly urged, could not vary the result. The answer contained a precise negation of the allegation on the part of the appellant,

that the assignment was made, for a full and valuable consideration; and, I take it, I could not decree against this answer, on the testimony of one witness contradicting it. I, therefore, directed an issue, to try whether the assignment was a usurious, or a *bona fide* contract.

The certain effect of sending the matter to a jury, without the answer, unless the allegation of the respondent could be effectually supported *aliunde*, would be a verdict disaffirming the answer.

But the intent of the issue is *to refer to a jury*, whether the greatest degree of credibility is to be attached to the answer, or to the deposition. If either party have any auxiliary evidence, *that* may cause the one, or the other to preponderate; but to compare, they must, of course, be contrasted and weighed.

The circumstances of the case, and the rule to be observed, appear, to me, too clear to admit of doubt.

It was said, there was no general rule on the subject; but the rule is well established, that if a case be sent to a jury, on the ground of the evidence being in *equilibrio*, the answer must be sent, as well as the evidence in the cause.

Withdraw the answer, and the scale must, in a moment, kick the beam, for then, there is nothing to form an equipoise.

But it was said, that the allegations of the defendant were in avoidance, and so not evidence. This, I conceive, has been already answered, and, therefore, it is not necessary to repeat my former opinion.

I, therefore, sent the answer to the jury, as part of the matter on which they were to determine.

2 *Atk.* 140.
1 *Vern.* 161.
2 *Chan. Ca.* 8.
1 *Bro. C. Ca.* 58.

*Benson*, for the appellant. The permission given to read the answer of *Livingston*, in evidence, on the point in issue, that is, whether the contract were usurious or not, was improper; because, *that* part only of an answer can be adduced in testimony, which is an answer to the allegations of the bill. Whatever goes in avoidance, even of that which is admitted, must be proved. *Gilb. L. Ev.* 52. As, therefore, the bill did not allege usury, but the defendant insisted on it, in avoidance of the securities alleged to have been entered into, the circumstances creating the usury, could not legally derive any support from the answer. This doctrine is sanctioned in *Barn. Ch. Rep.* 373,* where it is said, that, on an injunction bill, " if a plain equity be set forth by the bill, and admitted by the answer, but endeavoured to be avoided by another fact, the injunction shall always be continued till the hearing." The same principle is to be found in 2 *Eq. Ca. Abr.* 247. It is no argument against this, to urge, that the bill states the assignments to have been made " for a full and valuable consideration." They are words of course, the addition of counsel, and mere surplusage ; for it was not necessary to do more than state the execution of the deeds, and pray a foreclosure. Besides, the expression itself is used with a reference to the indorsements on the mortgages, and cannot, therefore, be deemed a substantive allegation. We also contend, that, in the present instance, the chancellor had no right to order an issue. This is a power to be exercised only in cases of doubt, where the question is on the credibility of witnesses, or on which side circumstances preponderate. Here, there could be no hesitation. The answer of *Livingston*

*Allen v. Crobcroft.

was inadmissible on the point of usury, and *Evertson*, his own witness, who cannot, therefore, be discredited by him, says, he knew not of any. But, admitting that *Livingston's* answer is to be received as testimony; it does not contain any fact amounting, in judgment of law, to usury, so as to affect the securities in the hands of the appellant. The statute against usury applies only to original contracts between borrower and lender, upon which securities are given. The maxim, therefore, is, once usury and always usury ; but if not usury in its inception, it can never become so afterwards. It follows, that subsequent discounts or purchases at an under value, however unconscientious, can never taint the original contract. But however this may be, as all the transactions relating, both to the original contract and the assignment, are fully before the court, and as it is not pretended that any further light can be thrown on the subject, the tribunal, before which the cause is now brought, will decide on the whole case, without referring it back to an examination, which will serve only to bring it here again. In *Le Guen's* case the same thing was done, and it is no more than the ordinary course of the court.

*Riggs & Hoffman,* contra. To determine wheter the answer of *Livingston* ought to have been ordered to be read as evidence, it is only necessary to recur to the practice of the court of chancery, and the circumstances of the case. As to the first; whatever is stated in the bill must be answered, though not interrogated to ; for were all the interrogatories, which are usually annexed to a bill, totally omitted, still every part must be answered ; because

K

what it sets forth is deemed an allegation. Thus, a defendant is under the necessity of answering, on oath, what is contained in the bill; and the plaintiff has the advantage of purging the conscience of his adversary. But when he has done this, he cannot take a part of the answer which suits his purpose, and reject the residue, under a pretence, that the matter in his bill to which it applies, was surplusage, and needed not to have been answered. Here a consideration was set forth, on which the assignment of the mortgages was made. The defendant, *Livingston*, was therefore called on, either to admit the consideration as stated, show some other, or deny it altogether. He has shown it to be usurious, and had the cause, with respect to him, gone to trial on bill and answer, it would have been complete evidence. There was, however, a witness examined, and as the chancellor might apply for the assistance of a jury, to aid his determination, it was indispensable to order the answer to be read in evidence, for otherwise there would have been nothing to oppose to, or explain the testimony of *Evertson*, and the verdict must necessarily have been according to his depositions. It was requisite that *Livingston's* answer should be read in testimony on another ground. The cause, as between *Bush & Townsend*, went to trial on bill and answer; all, therefore, that he says, he believes to be true, and what he refers himself to, must be received as truth. The answer of *Livingston* he expressly mentions, adding, that he had been informed and believed " the matters therein contained were true." Besides, when *Townsend* was, by the supplemental bill, made a party, *Livingston* became a substantial witness. That the chancellor can direct an issue only where the testimony

clashes, is not correct. In 2 *Vern.* 554,* the answer of the defendant was directed to be read in evidence, merely to enable to draw an inference. The truth is, that, in most cases, it is discretionary in the chancellor, whether he will send the cause to a jury or not, and that there is no settled practice on the subject, except where an answer denies, what one witness affirms. Then, indeed, an issue is ordered of course, because, on such occasions, the rule is, that chancery cannot make a decree. *Lord Milton* v. *Edgworth and others*, 6 *Bro. Pa. Ca.* 580. *Pember & ux.* v. *Mathers.* 1 *Bro. Ch. Rep.* 52. The principles on which courts of equity proceed, when they order an issue at law, are fully laid down by *Lord Kenyon, in* 7 *D. & E.* 667.† If, says he, " a court of equity direct an issue to be tried, it may modify it in any way it thinks proper. One of the rules of courts of equity is, that they cannot decree against the oath of the party himself, on the evidence of one witness alone, without other circumstances; but, when the point is doubtful, they send it to be tried at law, directing that the answer of the party shall be read on the trial; so they may order, that a party shall not set up a legal term on the trial, or that the plaintiff himself shall be examined, and when the issue comes from a court of equity with any of these directions, the courts of law comply with the terms on which it is so directed to be tried." As to matter of avoidance being to be proved, that we do not deny. The nature, however, of an avoidance is to be seen. It is something subsequent and *dehors* that which is admitted or alleged. As if a debt be acknowledged, but it be added " you released it," or " I paid it." There the release, or

ALBANY,
February, 1805.

Bush
v.
Livingston and
Townsend.

* I..ison v.
Rhodes.

† Bauerman v.
Radenius.

Bush
v.
Livingston and
Townsend.

* *Woollet* v.
*Roberts.*

payment, being matter of avoidance, must be proved. The answer is not by way of avoidance of that which is admitted, but of showing it to be otherwise than stated, and was, therefore, proper testimony. Not only the answer, but the very bill may be ordered to be read in evidence. 1 *Morg. Ess.* 111. 1 *Ch. Ca.* 65.* The chancellor, therefore, had the power to order the issue directed, modifying, as he pleased, the evidence to be used, and, though the reading the answer is confined to the allegations of the bill, that part relating to the consideration of the assignment was proper, because it was alleged to have been *bona fide.* The circumstances of this case render it peculiarly a matter for jury reference. *Bush* is stated to have paid but 5,600 dollars to *Evertson,* and the consideration mentioned, in the assignment itself, is 6,000 dollars. It ought, therefore, to have been left to a verdict of twelve men to ascertain whether the *extra* 400 dollars was not a usurious forbearance for 90 days. That it was so, seems almost confessed. *Bush* sets forth, that *Livingston* applied to him to borrow money ; *Livingston* admits it to be a loan, and *Evertson* asserts, that he thought the 5,600 dollars were lent by the appellant. When all parties thus call the transaction a loan, it cannot be pretended it was a purchase. It is said, however, if the primitive contract was not usurious, no subsequent matter will make it so. True, as between the original parties. But what is the contract here ? The mortgages ? No. The debt created between *Livingston* and *Bush* to pay off those mortgages, and for which the assignment was to be the security. *Bush* takes the mortgages, not on the original valid consideration, but on

one that was foreign to them, new, and tainted. It is strange that the securities shall stand good for a consideration, which, if they did not exist, would be illegal. It has been ruled, that the security was void, though the debt remained, but never till now argued that the debt was void and the security good. This would be an easy mode of slipping through and evading the statute. Wherever there is a borrowing and lending, it is within the act, and it is not in the wit of man to frame a contrivance to take the transaction out of its operation. *Cowp.* 115.\* 776.† *Doug.* 740.‡ In 5 *Bac. Abr.* 419. *old ed. pl.* 6, there is a case which shows that usury may take place upon a security originally good, and be insisted upon, between the parties themselves.§ The indorsor of a note for 200 pounds, which had three months to run, passed it to the plaintiff, for the consideration of 197 pounds; at the end of that time, another note at three months, for 200 pounds was given, and 3 pounds more paid. It was by *Lee*, C. J. referred to a jury, to determine whether the transaction was a loan or a purchase; they determined it to be the former, and it was held usury. This authority does away all idea of a purchase, and establishes, that a new security for a debt originally legal, if compounded with a usurious receipt of interest, is bad for the whole, as against the borrower. But though the subject of usury or not, has been entered into, this court can pronounce only on that which is appealed from ; the order and its contents.

*Harison and Benson* in reply. We do not deny the power of a court of equity to send a case to a jury. But it is not an *ad libitum* power, and, when exercised must be for the determination of a fact, not a matter of law. Here the simple question was, whether, on

ALBANY,
February, 1805.

Bush
v.
Livingston and
Townsend.

\* *Floyer* v. *Edwards.*
† *Jestons* v. *Brooks.*
‡ *Lowe* v. *Waller.*

§ *Massa* v. *Danling*, 2 *Stra.* 1143.

Bush
v.
Livingston and
Townsend.

the circumstances detailed, the transaction were usu-
rious or not.   This being an inference of law, ought
to have been made by the chancellor.   He could not
contemplate the addition of *Livingston's* testimony as
a witness, because, to render it admissible, he must
have released the surplus of his estate, and the con-
tingency of such an event was, in itself, sufficient to
prevent any measure being taken upon the expecta-
tion of it. Besides, the issue is, in fact, to try whether
the defendant, or his own witness, is to be believed.
There is no instance of such an order.   Allowing,
however, that it was correct to send this cause to a
jury, *that* could not be directed to be used as evi-
dence before them, which was not so in chancery.—
The answer would not, even there, have been testi-
mony to establish the usury; for, as containing new
matter, in avoidance, it must have been proved by
something extrinsic.   For, what avoids, needs not be
subsequent.   Any circumstance which destroys the
otherwise legal consequence of a thing, whether it
be cotemporaneous, concurrent or subsequent, is
matter of avoidance.   Thus, infancy and usury are
avoidances, but the former is not a subsequent mat-
ter, and the latter takes place in the formation of the
contract it avoids, at the very time it is created ; yet
each, if relied on, must be proved.   On this point,
the rule in equity, is the same as at law.   In both, the
defence must be strictly made out by evidence. This
principle is found in *Tate* v. *Wellins*, 3 *D. & E.* 531.
Because, as is laid down in 5 *Bac. Abr. old ed.* 420,
*pl.* 7, " a court will not easily avoid a bond, and the
corrupt agreement ought to be specially and particu-
larly set forth, and the *quantum* of interest, other-
wise the plaintiff can never tell what to answer." It

is not possible to vacate the securities in the hands of the appellant, on the score of usury, unless it be shown to have existed in the original transaction be- tween *Livingston* and *Evertson*, for it is in right of the latter that *Bush* now claims. He can recover from *Livingston* no more than is due in virtue of the primitive contract, which cannot be impeached by an *ex post facto* agreement between *Livingston* and the assignee of *Evertson*. Neither in law nor in equity, is the plea of usury a favourite. By each tribunal the money actually paid is deemed in conscience due, and endeavours are invariably made by both, to give back the principal and legal interest, though they may deny the surplus or excess. In a case in 4 *D. & E.** it was *una voce* laid down, that if an in- * *Le Grange v. Hamilton, 4 D. & E. 613,* strument can, by any reasonable construction, be con- sidered not usurious, the court was bound to do so. As, therefore, in this case, the whole merits are before the court, and the securities held by the appellant were given on a *bona fide* consideration, we ask for a final decree.

*Per curiam,* delivered by Spencer, J. The ap- pellant's counsel have insisted on the argument,

1st. That so much of *Livingston's* answer as charges the appellant with usury, is not evidence, and is to be proved *aliunde.*

2d. That the order of the chancellor, in leaving at large, what part of the answer was to be read, is therein erroneous.

3d. That if *Livingston's* answer is to be received as evidence, *in toto,* the charge of usury is not, in law, established.

4th. That an issue ought not to have been directed in consequence of contradictions, between *Living- ston* and his own witness, *Evertson.*

ALBANY,
February,1805.

Bush
v.
Livingston and
Townsend.

5th. That the whole merits of the case being be-fore this court, it will decide thereon definitively, and remit the cause to be carried into execution.

The counsel for the respondents have combatted these propositions, and insisted,

1st. That, independent of *Livingston's* answer, the fact of usury is made out.

2d. That from the state of proceedings, in rela-tion to *Townsend*, the charge of usury is established.

3d. That from *Livingston's* bankruptcy he can now be rendered a competent witness, and, therefore, an issue ought to be directed.

In investigating this cause, several of the points raised will not be examined, as a decision on them would be superfluous, from the view I have taken of the subject. It appears to me, from the authorities I have consulted, that, admitting *Livingston's* answer in relation to the usury to be evidence, and to stand uncontradicted, I still must maintain, that there ex-isted no usury as applicable to the bonds and mort-gages assigned to the appellant; and that, whether the answer is or is not evidence, still, that with respect to the excess of the 5,600 dollars paid by the appel-lant to *Evertson*, the testimony of the latter, and the admissions in the bill, show that the appellant cannot recover it.

I now proceed to examine whether the transactions stated in *Livingston's* answer, will, under the notion of usury, deprive the appellant of his right to hold the mortgages assigned to him as a security for 5,600 dollars, and the legal interest which has since accrued thereon. In the research I have made, I have met with no authority, or even *dictum*, that a security for the payment of money, in its inception uncontami-

nated with usury, can, by an *ex post facto* agreement for a receipt of a greater sum than the statute allows for forbearance, be rendered usurious.   In the case read by the respondents' counsel, from 5 *Bac. Abr.* 419, *pl.* 6, there was a renewed obligation, in which the usury and the *bona fide* debt were consolidated, and there it was held to be usurious.   But this case is not law, as will, I think, be hereafter shown.

ALBANY,
February, 1805.

Bush
v.
Livingston and
Townsend.

The first essential to usury is, that there be a loan. *Hawkins*, in 2 *vol.* 373, *sec.* 1, says, " that it is a contract, on the loan of money, to give the lender a certain profit for the use of it upon all events, whether the borrower make any advantage of it or not, or the lender suffer any prejudice." It is true, that it may take place in relation to the rent of lands, or the sale of goods, but, as applicable to this case, an inquiry into usury of that kind cannot be necessary.

It is true, that the appellant, *Livingston*, and the witness, *Evertson*, speak of the money paid by the former to the latter, as a loan from *Bush* to *Livingston*.   The transaction, however, must decide that point, and not the expressions and language of the parties.   *Bush* says, that *Evertson* having demanded payment of his debt, *Livingston* applied to him, and requested him to lend him a sum sufficient for that purpose, and offered to secure the repayment thereof, by procuring an assignment to *Bush* from *Evertson ;* and that, accordingly, on the 22d of *July*, 1799, the assignments were made in due form of law.   *Livingston* states, that, being urged by his necessities, he applied to *Bush* to borrow a sum of money to pay off the bonds and mortgages, and that *Bush*, taking advantage of his necessities, offered to loan him 5,600 dollars for ninety days, if he would allow him for the

L

forbearance 400 dollars, to which he consented. That it was then agreed between *Bush*, *Evertson* and himself, that *Bush* should pay *Evertson* 5,600 dollars towards satisfying him for the amount due on the bonds and mortgages, and that *Livingston* should secure to *Evertson* what should remain due for principal and interest, *Evertson* assigning to *Bush*, to secure him the repayment of the 5,600 dollars, and also the 400 dollars, in pursuance of which agreement, the bonds and mortgages were assigned. *Evertson* deposes, that he understood and believed the 5,600 dollars paid him by *Bush* was a loan from *Bush* to *Livingston*, and his reason for so believing was, that the money was paid at the request of *Livingston* for his sole benefit. The transaction between *Bush* and *Livingston* was substantially this : *Bush*, to gain 400 dollars for ninety days forbearing of 5,600 dollars, advanced the latter sum to *Evertson* for *Livingston*, upon good and valid securities, and took the assignments as for 6,000 dollars.

As between *Evertson* and *Bush*, there can be no question that the latter became invested with all the right of the former to the sum then actually due on the bonds and mortgages. In fact, this payment was not a loan to *Livingston*, because *Bush* paid it to *Evertson*, as the consideration of his assignment. If *Evertson* himself, without the intervention of *Bush*, had exacted 400 dollars, or any other sum, from *Livingston*, for forbearance for a limited period, such exaction, however usurious, would not invalidate the *bona fide* securities. In the case of *Pollard* v. *Scholy*, Cro. *Eliz.* 20, *Pollard* sold to *Scholy* two oxen for 6*l*. 6*s*. 8*d*. payable at *All Saints* next; on the same day *Scholy* required a longer time ; *Pollard* gave him to the first of *May*, paying to him for forbearance, three quar-

ters of wheat, which amounted to more than the legal interest. In debt for the 6*l.* 6*s.* 8*d.* the defendant pleaded this in avoidance of the contract. The opinion of the justices was, " that the statute does not make the contract void which was duly made, but doth only avoid all contracts for usury, and this last contract is void, being against the statute, but the first was good, being made *bona fide.** In 2 *Hawk.* 377, *sect.* 17, is this case—"*A.* was fairly indebted to *B.* in 1,125*l.* and on *A.* desiring time to pay it, *B.* insisted that 150*l.* should be added to the debt, as he would have nothing to do with interest. Accordingly, *A.* gave him five acceptances for these two sums, payable within fourteen months, and it was held, that the *bona fide* debt subsisted, unimpeached by the subsequent usurious transaction."† A reference to the reporter, from whom the antecedent decision is taken, fully justifies the summary of the case in *Hawkins.* The same principle is recognised in 7 *Mod.* 119.‡ Sir *T. Ray.* 196.§ 4 *Burr.* 2253.¶ and in *Vin. Abr. Tit. Usury, H. pl.* 6, it is laid down, " that if the first contract is not usurious, it shall never be made so by matter *ex post facto.*" The case of *Ferral* v. *Shaen,* 1 *Saund.* 294, is also to the same effect, that a bond, which was good when made, is not avoided by a subsequent usurious contract for delaying the day of payment.

All these authorities proceed on the wording of the statutes against usury. They forbid the taking more than the rate of interest prescribed, and declare all assurances, &c. whereby more shall be reserved, or taken, to be void. Now if, in this case, the bonds and mortgages in their creation were valid, if no more interest was reserved than the law allowed, how can

ALBANY, February,1805.

Bush
v.
Livingston and Townsend.

* See *Turner* v. *Hulme,* 4 *Esp. Rep.* 11, a note given for the liberation of a defendant under arrest, on a usurious note, though for the amount of the very usurious note, cannot be impeached for the usury of the first note, where a third person joins in the second note.
† *Gray* v. *Fowler,* 1 *H. Black.* 462, *S. C.*
‡ *The Queen* v. *Sewel.*
§ *Rex* v *Allen.*
¶ *Abrahams* v. *Bunn.*

they, conformably to this statute, and the universally concurring expositions of it, become void ? If the mortgages and bonds cannot be affected by the charge of usury, much less can the assignment, for the reason, that this is an act between *Evertson* and *Bush*. *Evertson* was capable of parting with his interest in these securities, and *Bush* of taking it. *Evertson* has assigned, for an adequate consideration, all his right to the bonds and mortgages, and this cannot be impeached on the pretence of usury between *Bush* and *Livingston ;* because, as *Livingston* is not a party to the assignment, he cannot complain that it is an assurance by which he is bound to pay more than the sum then due on the mortgages.

I think the appellant not entitled to recover more than the 5,600 dollars, and the interest, on two principles, independently of *Livingston's* answer. 1st. When *Evertson* made the assignment, *Livingston*, as is .proved by *Evertson*, gave him two promissory notes for the balance beyond the 5,600 dollars paid him by *Bush*. These notes were accepted by him as a payment of so much, towards the mortgages and his account, and have since been actually paid in full. The assignee of all *choses* in action, excepting bills of exchange and notes, takes them subject to all the equities between the original parties. *Bush*, therefore, though assignee, nominally, for 6,000 dollars, can exact no more than *Evertson* could, and clearly, by transactions between *Evertson* and *Livingston*, before or at the time of assignment, no more, as between *them*, than 5,600 dollars could be collected on the bonds and mortgages. But 2dly, from the appellant's state of his own case, in connection with the testimony of *Evertson*, it appears, evidently, that the

appellant availed himself of the necessities of *Livingston* to obtain more than legal interest; and, to use the expressions of Lord *Mansfield*, "though the transaction itself may not amount to usury, yet it was taking a hard and unconscionable advantage." In the case of *Floyer* v. *Edwards, Cowp.* 116, it was held that money, thus claimed, should not be recovered in an action for money had and received. In a court of equity, whose peculiar jurisdiction it is to relieve in cases of fraud, and whose maxim it is, *that he who would have equity, must do equity,* I think there can be no doubt, that, apart from the consideration of usury, the appellant ought not to recover beyond the 5,600 dollars and the interest. To this I conceive him well entitled. The principles I have advanced, and the conclusions I have drawn, lead to the most equitable and righteous result. The appellant obtains the money really advanced, with interest, and the respondent is relieved from the advantages attempted to be taken of his distresses by the appellant.

It will be observed, that I have abstained from any inquiry into the correctness of the chancellor's order in point of form; because, in my opinion, the issue, if correct in form, would have been upon a point wholly immaterial. The respondents could never have made out more than *Livingston* alleges, and on his allegations, taking them for true, my opinion has proceeded, so far as respects the question of usury.

There remains only one point necessary to be considered; that is, whether this court will finally decide the cause? In the case of *Gouverneur & Kemble* v.

*Le Guen,* this court, on an appeal from the order of the chancellor, directing an issue, finally decided the cause, and directed the complainant's bill to be dismissed. It did so on precedents from the proceedings of the House of Lords, in England, on appeals from chancery, and because the whole merits of the case were before the court. When it is considered that there can be no further proofs in the cause, that the whole merits have been discussed and reviewed, that it will save litigation and expense, I am myself contented to be bound by the precedent which has been made. In my opinion, the order appealed from ought to be reversed, and an order entered, that the chancellor decree the respondents to pay the appellant, by a time to be limited, 5,600 dollars, with interest, from the 22d of July, 1799, with costs, in the court below to be taxed, or that the respondents be foreclosed their equity of redemption.

Judgment of reversal accordingly.

## Hallet and Bowne *against* Jenks.

IT was ruled, that a cause cannot be set down for hearing, till cases are delivered.